## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BETH ANN BRETTER, et al.,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 22-2509** |
| | : | |
| **KAREN F. PEYTON** | : | |

_____

**McHugh, J.**                                               **September 23, 2022**

## MEMORANDUM

     This action arises out of a family dispute over inheritances.  Two siblings have filed suit against their sister alleging forgery of their brother's will and misconduct related to the financial affairs and estates of both their brother and mother.  Their sister moves to dismiss all Plaintiffs' claims based on the probate exception to federal subject matter jurisdiction. I conclude that this Court lacks jurisdiction over claims that would in effect require me to annul a will, but that jurisdiction exists over claims pertaining to allegedly improper *inter vivos* transfers of property. Defendant's motion will therefore be granted in part and denied in part.

### I.    Factual Background

     James Peyton Sr. and Anna Peyton had four children: Beth Ann Peyton, James A. Peyton Jr., Mark Peyton, and Karen Peyton.  Compl. ¶ 9, ECF 1.  Two of those children, Beth Ann and James Jr., have sued contending that their sister, Karen, engaged in fraud and breached her fiduciary duty in her role as executrix of their mother Anna's estate and their brother Mark's estate.

     Prior to their death, James Sr. and Anna conveyed title to their house located at 2745 Maxwell Street, Philadelphia, PA 19136 to Mark and Karen.[1]  Compl. ¶ 10.  James Sr. died in

---

[1] Plaintiffs' Complaint asserts that Mark and Karen became owners of the house as tenants in common. Compl. ¶¶ 10-12.  Defendant asserts that Mark and Karen owned the property as tenants by the entireties.

2009 and Anna died in 2013.  *Id*. ¶ 13.  Anna's will appointed her daughter Karen as the sole executor of her estate.  *Id.*  ¶ 34.  On October 2, 2018, Mark died.  *Id.* ¶ 14.  Mark had never married and his will appointed his sister Karen as the sole executor of his estate.  *Id.* ¶¶ 16-18. Karen probated Mark's will with the Philadelphia Register of Wills.  *Id.* ¶ 17.  Mark's will bequeathed his tenant in common interest in the property to Karen and the residue of his estate to be divided equally among his three siblings: James Jr., Beth Ann, and Karen.  *Id.*  ¶¶ 19-20; Mark's Will, Ex. P-2 to Compl., ECF 1-2.  Plaintiffs allege that there was no residue of Mark's estate and consequently Beth Ann and James received no estate distributions.  *Id.* ¶ 21.

In the present suit, Plaintiffs allege that they learned in November 2021 that Mark's will was a "forgery by Karen, which Karen had admitted."  *Id*. ¶ 22.  Plaintiffs allege that because the will was a forgery, the "probate by the Philadelphia Register of Wills was invalid. . . all bequests provided for in the Will were invalid . . . [and] Mark died intestate."  *Id.* ¶¶ 23-25.  Beth Ann and James Jr. go on to assert that "[s]ince Mark died intestate, Pennsylvania statutory law regarding intestate succession should have determined which of Mark's heirs would have been entitled to inherit the real and personal property owned by Mark at the time of his death."  *Id*. ¶ 26.  They then allege that they are his heirs by intestate succession and that title to Mark's 50% tenant in common interest in the house on Maxwell Street should have become vested in Beth Ann, James Jr., and Karen, as tenants in common.  *Id.* ¶ 28.

Plaintiffs' Complaint also refers to allegedly fraudulent *inter vivos* transfers that diminished Mark's estate.  They plead that "Mark owned other personal property (including substantial cash accounts and securities) prior to his death," *id.* ¶ 29., and that Karen caused Mark,

---

Mot. to Dismiss at 2.  Under Pennsylvania law, however, two people who are not married to one another cannot hold title to land as tenants by the entireties.  *See Masgai v. Masgai*, 333 A.2d 861, 863 (Pa. 1975). Presumably, Defendant means to invoke the concept of joint tenancy with right of survivorship.

either by forgery or undue influence, to execute documents rendering such property payable to Karen either prior to or at the time of his death. *Id.* ¶ 30.

Finally, Plaintiffs also allege that they "have reason to believe that Karen may have previously diverted, to Karen alone, certain other assets of James A. Peyton, Sr., Anna E. Peyton and/or Mark, which they owned prior to their respective deaths, and which was intended to be shared pro rata among the surviving children of James A. Peyton, Sr. and Anna E. Peyton." *Id.* ¶ 32. Plaintiffs report discovering an account in the primary name of Anna, with Karen designated as joint owner, with a June 30, 2013 balance of $30,705.74 (savings) and $12,416.30 (certificate of deposit). *Id.* ¶ 35. They further allege that there was another account in the primary name of Anna E. Peyton with Karen designated as joint owner, which had a June 30, 2013 balance of $171,911.48. *Id.* ¶ 36. Lastly, they allege that, prior to her death, Anna held multiple certificates of deposit in the approximate total amount of $200,000. *Id.* ¶ 37. None of these accounts or funds became part of the probate assets of Anna's estate. *Id.* ¶ 38.

A precise delineation of the 5 counts in the Complaint is essential to resolution of this motion. The first count is an action for fraud. Compl. ¶¶ 40-46. The material misrepresentation that undergirds the fraud claim is Karen's acting to probate the will forged in Mark's name. *Id.* ¶ 42. As relief, Plaintiffs request that Karen provide an accounting of all assets owned by James Sr., Anna, and Mark prior to their deaths, as well as which assets were transferred to Karen before or after their deaths. *Id.* ¶ 46. They also request an order directing the recording of a corrective deed for the house on Maxwell Street with Plaintiffs each holding a 16.6% share, or an order directing Karen to pay Plaintiffs the corresponding current fair market value. *Id.* Further, they want Karen to pay pro rata mesne profits to Plaintiffs for detaining the property and seek compensatory and punitive damages. *Id.*

The second count is for breach of fiduciary duty related to her Karen's as executrix of both Anna and Mark's estates.  Compl. ¶¶ 47-55.  They allege that Karen had agreed to hold the proceeds of the Anna and Mark's accounts subject to the "obligation to share such proceeds pro rata" with Plaintiffs and that she failed to account for or make required pro rata distributions to Plaintiffs.  *Id.*  Plaintiffs seek compensatory and punitive damages.  *Id.* ¶ 55.

The third count is an action for conversion.  Compl. ¶¶ 56-64.  Again, this claim rests on Karen's handling of Anna and Mark's estates, alleging that Karen refused to account for or make required pro rata distributions to Plaintiffs.  *Id.*  Plaintiffs seek compensatory and punitive damages.  *Id.* ¶ 64.

The fourth count is for unjust enrichment.  Compl. ¶¶ 65-75.  Plaintiffs allege that Karen was unjustly "enriched by the benefit of the funds which she received to the extent that such funds rightfully should have been shared with Beth Ann and James Jr."  *Id.* ¶ 72.  Plaintiffs seek damages.  *Id.* ¶ 75.

The fifth count is an action for declaratory relief in the form of a constructive trust.  Compl. ¶¶ 76-86.  Plaintiffs seek a "judicial determination that Karen should be subject, pendente lite, to a continuing constructive trust over all funds presently in Karen's name, which constitute both funds which rightfully should have been shared with Beth Ann and James Jr., and the proceeds and products of such funds, to preserve the status quo and protect the rights of Beth Ann and James Jr. to a financial recovery if any of the Counts I, II, III or IV claims in this case should be successful."  *Id.* ¶ 86.

Defendant filed a motion to dismiss, asserting that all of Plaintiffs' claims fall within the probate exception to diversity jurisdiction such that this Court lacks jurisdiction.   ECF 5.

## II.    <u>Standard of Review</u>

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack.  A facial challenge contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (cleaned up).  "[A] factual challenge, attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  The plaintiff bears the burden of establishing subject matter jurisdiction.  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991).

The jurisdictional challenge here is facial.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977) ("A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted.").  "[T]he standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006) (citation omitted).

## III.    <u>Discussion</u>

Defendant asserts that this Court lacks subject matter jurisdiction over all of Plaintiffs' claims because of the "probate exception" to its Article III power.[2]  The probate exception is not compelled by the text of the Constitution or by federal statute, but instead is a judicially created doctrine that stems "in large measure from misty understandings of English legal history."

---

[2] Defendant's Motion refers to the probate exception to "personal" jurisdiction but seeks dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Mot. at 3.  I will ignore the references to personal jurisdiction and treat the issue as one of subject matter jurisdiction. In the absence of the probate exception, the underlying basis for subject matter jurisdiction here is diversity pursuant to 28 U.S.C. § 1332, because the siblings are citizens of different states and the amount in controversy is over $75,000.

*Marshall v. Marshall*, 547 U.S. 293, 299 (2006).  In *Marshall*, the Supreme Court criticized decisions that applied the exception broadly, characterizing it as "narrow" and of "distinctly limited scope."  *Id.* at 305.  "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."  *Id.* at 311–12.  But "it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."  *Id.*  Having thus redefined and limited the probate exception, the *Marshall* Court held that a federal district court had jurisdiction to hear an *in personam* damages claim for tortious interference with an expected inheritance, even though the estate from which that inheritance was expected was subject to ongoing Texas probate court proceedings.  *Id*. at 312.³

Distilling the Supreme Court's holding in *Marshall*, the Third Circuit clarified that the probate exception applies when "a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court."  *Three Keys Ltd. v. SR Util. Holding Co*., 540 F.3d 220, 227 (3d Cir. 2008).  In *Three Keys*, the Third Circuit's analysis focused on the third prong.  The court adopted a practical approach to determining whether claims implicated *in personam* or *in rem* jurisdiction and cautioned against making this determination based only upon the "surface" of the claims alleged.  540 F.3d at 229-30.  Ultimately, the court held that although four of the five counts requested the exercise of *in personam* jurisdiction, jurisdiction over the claims was nonetheless

---

³ Before *Marshall*, most federal courts, including the Third Circuit, interpreted the probate exception more broadly. *Marshall* criticized and superseded an earlier Third Circuit case, *Golden ex rel. Golden v. Golden,* 382 F.3d 348 (3d Cir. 2004), *abrogated by Marshall v. Marshall,* 547 U.S. 293, (2006), which had interpreted the probate exception as a jurisdictional bar to claims "interfering" with the process of probate.

barred by the third prong because the nature of the plaintiff's theory of relief required a district court to determine various parties' rights and interests in specific estate property that was currently in the custody of the state court. *Id.* at 229–30.

Here, although the claims are ostensibly also *in personam* actions, Defendant argues that Plaintiffs' Complaint runs afoul of the third prong, because "Plaintiffs seek the Court to exercise *in rem* jurisdiction over the estate assets by seeking a constructive trust on those assets be imposed on Karen . . . These items are under the custody of the Orphan's Court." Mot. at 5, ECF 5.   In response, Plaintiffs assert that "Mark's Will has already been probated, Karen has wound up in possession of all of the assets of Mark's Estate, and the claims in this case do not require any further probate process . . . [T]here is no further estate administration proceeding in the probate court, and no property that remains under the custody of the probate court." Pls.' Resp. at 6, ECF 6.

From the face of the Complaint, while not explicit, it appears that the probate proceedings for both Mark and Anna's estates are complete. Defendants provide no evidence or argument to dispute this, beyond the conclusory statement above that the "items are under the custody of the Orphan's Court." Had probate proceedings been ongoing, Defendant would have had a strong argument under the reasoning of *Three Keys* that the third prong precluded jurisdiction as to at least some of the claims because much of the relief sought would necessitate exercising control of assets actively under the control of the state court. But the third prong is inapplicable where Plaintiffs are not asking this Court to "assume *in rem* jurisdiction over the same *res*." *Marshall*, 547 U.S. at 311; *cf. Three Keys,* 540 F.3d at 229 ("Because the SR Utility shares in question are still property under the jurisdiction of the Orphans' Court, it follows that we cannot assume *in rem* jurisdiction over that same property."); *New Jersey ex rel. McDonald v. Copperthwaite*, No.

7

3:13-CV-05559 FLW, 2014 WL 2208159, at *13 (D.N.J. May 28, 2014) ("The probate exception is intended to deprive the federal courts of jurisdiction over matters in which the relief requested would require the *simultaneous* exercise of *in rem* jurisdiction over the same estate property by the federal and state probate courts.") (emphasis added).[4]  Because the probate proceedings have closed, the third prong does not preclude federal diversity jurisdiction over any of Plaintiffs' claims.

The inquiry does not end there, however, because Defendant also argues that the claims are barred by the first prong—that a federal court may not probate or annul a will—contending that Plaintiffs are "asking this Court to annul Mark's will because of an alleged forgery, declare that he died intestate, and make determinations as to amounts to which Plaintiffs are entitled as beneficiaries of his estate."  Mot. at 4-5.  Plaintiffs acknowledge that they are "seeking a Court determination that Mark's will was a forgery," but argue that the probate exception is nonetheless inapplicable because none of the causes of action are directly to annul the will and "proof of the fact that Mark's will was forged by Karen is merely a predicate fact required" to support their common law *in personam* claims.  Pls.' Resp. at 6-7.

Courts in this district have held that the probate exception applies where the theory of recovery requires the federal court to determine a will to be invalid because the court would be effectively annulling a will.  *See e. g., Rothberg v. Marger*, No. CIV. 11-5497 RBK/KMW, 2013 WL 1314699, at *5–7 (D.N.J. Mar. 28, 2013) (collecting cases); *Luellen v. Luellen*, 972 F. Supp. 2d 722, 729 (W.D. Pa. 2013) (dismissing claims that money was stolen from a joint bank account

---

[4] I note that the Sixth Circuit in *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir.2007), which was favorably cited in *Three Keys*, 540 F.3d at 230 n.10, held that claims that would "disturb or affect the possession of property in the custody of a state court" were barred by the probate exception, even though the underlying estate there had already been probated.  In *Three Keys,* however, the Third Circuit's analysis appeared to have a temporal focus when it used the word "still."  This persuades me that the third prong is not applicable where probate proceedings have closed.

owned by the plaintiff and the executrix because it would require determining the plaintiff's entitlements under a will); *Berman v. Berman*, No. 07–2506, 2009 WL 1617758 at *2 (D.N.J. June 9, 2009) (finding lack of federal jurisdiction under the first prong of the probate exception because the theory of the defendant's affirmative defense required the court to find that "the will underlying Plaintiff's claim is void and unenforceable, [and thus] would call upon the Court to determine whether or not to 'annul a will'") (citing *Three Keys*, 540 F.3d at 277)); *Solow v. Berger,* No. 10-CV-2950-JF, 2011 WL 1045098, at *2 (E.D. Pa. Mar. 22, 2011) (finding that jurisdiction over plaintiffs' claims for fraudulent misrepresentation of the validity of a will and civil conspiracy was barred by the first prong of the probate exception because "for plaintiffs to recover . . . there would have to be findings that [a later] will is invalid and that [an earlier] will is valid, effectively requiring the Court to annul the [the later] will and probate the [earlier] will").

Here, Plaintiffs' fraud claim (Count I) rests entirely on Karen's alleged forgery of the will. Moreover, as relief, Plaintiffs seek an accounting of James, Anna, and Mark's estates, a corrective deed changing the ownership of the house to reflect the ownership shares that would result from Mark's will having been annulled such that he died intestate, profits from detaining the house from 2018 to present, and compensatory and punitive damages.   Count I is therefore barred by the probate exception because Plaintiffs seek a determination that would effectively declare a will invalid and request relief that would re-administer Mark's will.   *See also Waterman v. Canal-Louisiana Bank & Tr. Co*., 215 U.S. 33, 45 (1909) (holding that a suit filed in federal court "goes too far in asking to have an accounting of the estate, such as can only be had in the probate court having jurisdiction over the matter").   Accordingly, Count I of Plaintiffs' Complaint is dismissed in its entirety, but without prejudice to Plaintiffs to the extent that they seek transfer to state court pursuant to 42 Pa. Cons. Stat. § 5103(b).

Plaintiffs' remaining claims all contain allegations that relate to the alleged concealment or *inter vivos* transfer of assets preventing them from ever becoming part of Anna or Mark's estates.  The breach of fiduciary duty (Count II), conversion (Count III), unjust enrichment (Count IV), and constructive trust (Count V) claims do not mention the forged will and instead pertain to Karen's alleged conversion of assets and failure to distribute monies from Anna and Mark's accounts.  These claims do not seek to probate or annul a will, or require the court to administer an estate, but assert individual liability for misappropriating assets outside the estate.  Such claims fall within the category of probate-related tort claims authorized by the Supreme Court in *Marshall*.   Indeed, in *Marshall* itself, the Supreme Court characterized claims against estate executors for breach of fiduciary duty as "matters well beyond probate of a will or administration of a decedent's estate."  547 U.S. at 311; *see also Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008) (finding the probate exception inapplicable because the "judgment sought would just add assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate"); *Rothberg v. Marger*, No. CIV. 11-5497 RBK/KMW, 2013 WL 1314699, at *9 (D.N.J. Mar. 28, 2013) (probate exception does not bar claim that defendants used unlawful means to cause the decedent to execute testamentary instruments which substantially decreased the share of the estate that the decedent had otherwise intended for the plaintiff).  As such, these claims are not barred by the probate exception.[5]

---

[5] In their Response, Plaintiffs assert that they should inherit Mark's accounts "by intestate succession." Pls.' Resp. at 3.  This allegation does not appear in the Complaint and such a claim would require annulling Mark's will and be barred by the probate exception.  *See Wisecarver v. Moore*, 489 F.3d 747, 750 n.1 (6th Cir. 2007) (allowing *in personam* claims against defendants to proceed against assets that "were allegedly transferred during [the testator's] lifetime and were therefore not part of his estate at his death," but limiting "Plaintiffs' claims to money damages related to the allegedly improper *inter vivos* transfers.  To the extent that Plaintiffs' claims for breach of fiduciary duty, fraud, or undue influence seek money damages equal to

Accordingly, Defendant's Motion is granted as to Count I and denied as to Counts II-V, subject to the limitations set forth in this memorandum.

## IV.    __Conclusion__

For the reasons discussed above, Defendant's Motion to Dismiss will be granted in part and denied in part.  An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge

---

the amount of the probate disbursements, awarding such damages would clearly be prohibited by the probate exception since it would be tantamount to setting aside the will.").

I also note that to the extent that Plaintiffs may be seeking the imposition of a constructive trust over *estate* assets, such relief would be barred.  *See New Jersey ex rel. McDonald v. Copperthwaite*, No. 3:13-CV-05559 FLW, 2014 WL 2208159, at *15 (D.N.J. May 28, 2014) (declining to exercise jurisdiction over Plaintiffs' claims to the extent they seek a judgment creating constructive trust over Estate assets).  But I understand Count V to be pertaining to assets which never were part of Mark or Anna's estates, and thus not precluded by the probate exception.